**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| FLOYD J. MYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 1:08-CV-96 |
| | ) | |
| CENTRAL INSURANCE | ) | |
| COMPANIES, PARKVIEW | ) | |
| MEMORIAL HOSPITAL, | ) | |
| ANTHEM BLUE CROSS BLUE | ) | |
| SHIELD, MEDICARE, | ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION AND ORDER**

This matter is before the Court on: 1) Defendant Secretary of Health and Human Services' Motion for Summary Judgment (DE# 18), filed on June 20, 2008, and 2) Defendant Parkview Hospital, Inc.'s Motion for Summary Judgment (DE# 16), filed on June 20, 2008. For the reasons set forth below, Defendant Secretary of Health and Human Services' Motion for Summary Judgment is **GRANTED** and Defendant Parkview Hospital, Inc.'s Motion for Summary Judgment is **DENIED**. Absent settlement, the parties are **ORDERED** to provide the Court with a proposed distribution of funds in accordance with this Opinion and Order on or before February 9, 2009.

BACKGROUND

Plaintiff, Floyd J. Myers, initiated this declaratory judgment

action against Defendants, Central Insurance Company, Parkview Memorial Hospital, Anthem Blue Cross Blue Shield and Medicare[1], for a determination of the appropriate allocation of insurance settlement funds.

The facts of this case are undisputed. On February 28, 2006, Mark S. Fletcher, an uninsured motorist, caused a vehicle accident between himself and Plaintiff, Floyd Myers ("Myers"). (Agreed Statement of Material Facts ¶¶ 3, 4). Myers had uninsured motorist insurance coverage in the amount of $100,00 from Central Insurance Company ("CIC"). (Agreed Statement of Material Facts ¶6).

This accident caused Myers to need medical treatment for the injuries he sustained. (Agreed Statement of Material Facts ¶ 7). Defendant Parkview Hospital, Inc. ("Parkview") provided medical treatment to Myers. (Agreed Statement of Material Facts ¶ 9). Parkview timely filed a notice of a hospital lien for the medical services rendered from February 28, 2006 through April 25, 2006. (Agreed Statement of Material Facts ¶ 10).

Parkview's claim in this case is only for a portion of the lien period; it is based on the period from February 28, 2006 through March 9, 2006. (Agreed Statement of Material Facts ¶ 11). For this period of time, Parkview charged for its services rendered to Meyers

---

[1] Michael O. Leavitt is the Secretary of the Department of Health and Human Services. In this capacity he is responsible for the administration of the Medicare program and, therefore, the proper defendant in this action.

in the amount of $78,770.40, of which CIC paid $97.50, leaving a balance due of $78,672.98. (Agreed Statement of Material Facts ¶ 11). Parkview claims that after reasonable attorney fees and a minimum amount due to the patient, its lien in the face amount of $78,672.98 should be satisfied in accordance with Indiana Code section 32-33-4-3. (Agreed Statement of Material Facts ¶ 11). Under this scenario, Parkview has determined that the net share of settlement proceeds due to Parkview is $46,257.28. (Agreed Statement of Material Facts ¶ 11).

For the period of March 9, 2006 to April 6, 2006, Parkview billed $43,979.81 to Medicare for services rendered to Myers. (Agreed Statement of Material Facts ¶ 12). Medicare paid and Parkview accepted Medicare's allowance of $28,191.19, in full satisfaction of this billing. (Agreed Statement of Material Facts ¶ 12). Medicare, not knowing of Myers' CIC insurance policy, paid medical providers the amount of $46,227.88 for medical services given to Myers. (Agreed Statement of Material Facts ¶ 14). After learning of the CIC policy, Medicare desires to be reimbursed for its payments for Myers' medical services. (Id.) Medicare is asking for reimbursement in the amount of $30,629.34. (Id.).

Myers has obtained an attorney who agreed to a one third (1/3) contingency fee plus reasonable costs to obtain a payment from CIC. (Agreed Statement of Material Facts ¶ 13). CIC has deposited the policy limit of $100,000 with the clerk of court and CIC has been

-3-

dismissed from this case. (DE ##'s 12, 15, 20).

Defendant Secretary of Health and Human Services ("Medicare") claims to have a superior claim and first right to the insurance payment for reimbursement of Medicare's payments for Myers' medical service. Conversely, Parkview claims that the hospital lien it placed on Myers, for the medial services provided by them to Myers, gives it a superior claim and first right to the insurance payment.

DISCUSSION

Motion for Summary Judgment Standard

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56© of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at

trial, summary judgment will be appropriate.  Where the parties file cross-motions for summary judgment, the Court must consider each motion, but despite the parties' agreement that no genuine issue of material fact exists, the Court can deny all motions if the parties do not establish their rights to judgment as a matter of law. *Grabach v. Evans*, 196 F. Supp. 2d 746, 747 (N.D. Ind. 2002).

Parkview's Motion for Summary Judgment Must be Denied and the Secretary of Human Services' Motion for Summary Judgment Must be Granted Because Medicare Has a Superior Claim to the Insurance Funds

There is no question that both Parkview and Medicare have a statutory right to the insurance payment made by Central Insurance Company.  Medicare is given a federal right under Medicare Secondary Payer ("MSP") provisions, 42 U.S.C. § 1395y(b)(2)(B), which states:

> (B) Repayment required
>
> (I) Authority to make conditional payment
>
> The Secretary may make payment under this subchapter with respect to an item or service if a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations). Any such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund in accordance with the succeeding provisions of this subsection.
>
> (ii) Primary plans
>
> A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item

or service. A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means. If reimbursement is not made to the appropriate Trust Fund before the expiration of the 60-day period that begins on the date notice of, or information related to, a primary plan's responsibility for such payment or other information is received, the Secretary may charge interest (beginning with the date on which the notice or other information is received) on the amount of the reimbursement until reimbursement is made (at a rate determined by the Secretary in accordance with regulations of the Secretary of the Treasury applicable to charges for late payments).

(iii) Action by United States

In order to recover payment made under this subchapter for an item or service, the United States may bring an action against any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan. The United States may, in accordance with paragraph (3)(A) collect double damages against any such entity. In addition, the United States may recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity. The United States may not recover from a third-party administrator under this clause in cases where the third-party administrator would not be able to recover the amount at issue from the employer or group health plan and is not employed by or under contract with the employer or group health plan at the time the action for recovery is initiated by the United States or for whom it provides administrative services due to the insolvency or bankruptcy of the employer or plan.

(iv) Subrogation rights

The United States shall be subrogated (to the extent of

> payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan.

Parkview is given a right to the insurance policy proceeds though Indiana's Hospital Lien Statute, Indiana Code § 32-33-4-1, which states:

> A person, a firm, a partnership, an association, a limited liability company, or a corporation maintaining a hospital in Indiana or a hospital owned, maintained, or operated by the state or a political subdivision of the state is entitled to hold a lien for the reasonable value of its services or expenses on any judgment for personal injuries rendered in favor of any person, except a person covered by:
>
> (1) the provisions of IC 22-3-2 through IC 22-3-6;
> (2) the federal worker's compensation laws; or
> (3) the federal liability act;
>
> who is admitted to the hospital and receives treatment, care, and maintenance on account of personal injuries received as a result of the negligence of any person or corporation. In order to claim the lien, the hospital must at the time or after the judgment is rendered, enter, in writing, upon the judgment docket where the judgment is recorded, the hospital's intention to hold a lien upon the judgment, together with the amount claimed.

While both statutes give a claim to Myers' insurance payment from CIC, neither explicitly states that one is superior to the other. The Court must determine which party has the superior claim.

### The Indiana Hospital Lien Statute is preempted to the extent that it conflicts with the MSP.

Medicare argues that Parkview's hospital lien is preempted by the MSP. State laws may be preempted by federal laws in three

-8-

circumstances. *English v. Gen. Elec. Co.*, 496 U.S. 72,78 (1990). Preemption may occur when 1) Congress explicitly defines the extent to which its enactments preempt state law, 2) state law regulates an area that Congress intended the Federal Government to occupy exclusively, or 3) state law actually conflicts with federal law. *Id*. at 78-79.

At issue here is whether the Indiana Hospital Lien Statute conflicts with the MSP. A conflict can arise when it is impossible to adhere to both the state and federal statutes, or when the statutes sharply interfere with each other. *Cox v. Shalala*, 112 F.3d 151, 154 (4th Cir. 1997). To put it plainly, "if the federal statute dictates one result and the state statute another, the state statute is preempted to the extent that it directly conflicts with federal law." *Id.*

Medicare argues that Indiana's Hospital Lien Statute conflicts with the MSP by not allowing Medicare to be reimbursed. In support of its argument, Medicare directs the Court to the Fourth Circuit's decision in *Cox*, which found the MSP preempted a North Carolina law that placed a cap on how much Medicare could get from a beneficiary.

In *Cox,* the plaintiff Jack Cox suffered severe injuries as a result of a motorcycle accident. He was hospitalized and ultimately died. At the time of the accident, Cox was a Medicare beneficiary and Medicare paid $181,187.75 in conditional benefits for Cox's medical care and treatment. Pursuant to a wrongful death statute

in North Carolina, Cox's personal representative brought an action in state court seeking damages, including Cox's medical expenses, against the person who allegedly caused the accident. This wrongful death case settled for $800,000.

After the settlement, a declaratory judgment action was filed by the estate seeking a declaration that no party could claim any portion of the $800,000 settlement above the wrongful death act's $1,500 limitation on a health care provider's right to recover a decedent's medical expenses. This cap limited the amount that Medicare could collect and the Court held that this was in direct conflict with the MSP and, therefore, the state law was preempted. *Id.* at 155.

As Parkview points out, the state and federal statutes before this Court do not interfere with each other in the same manner as the statute in *Cox* interfered with the MSP. Indiana's Hospital Lien Statute gives a hospital a right to claim funds for medical services; it does not explicitly limit Medicare's recovery as was the case in *Cox*. However, while the statutes here do not interfere in the same manner as the statutes interfered in *Cox*, they nonetheless interfere with one another.

Indiana's hospital lien gives Parkview the right to recover Myers' CIC insurance policy proceeds for services rendered to Myers. Similarly, the MSP gives Medicare the right to be reimbursed by Myers' CIC insurance policy for any conditional payment made on

Myers' behalf. Thus, Indiana's hospital lien gives Parkview the right to the same insurance proceeds as the MSP gives to Medicare. Thus, Indiana's hospital lien and MSP are in conflict because they both provide for payment from Myers' insurer.

While it is true that situations will arise where both an Indiana hospital lien and Medicare's conditional payment can be satisfied from an applicable insurance or settlement fund, it is equally true that there will be times where there are not enough funds to satisfy both the hospital lien and Medicare's conditional payment. This case presents the latter of the two scenarios. Myers' insurance policy is not sufficient to cover both Parkview's hospital lien and Medicare's conditional payment. This results in a conflict between the MSP and Indiana Hospital Lien Statute. In such a case as this, "the state statute is preempted to the extent that it directly conflicts with federal law." *Id.* at 154 (citing *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963)). As such, Medicare's right to reimbursement as a secondary payer takes precedence over Parkview's hospital lien.

Parkview argues that there is no conflict between the MSP and the Indiana Hospital Lien Statute. Instead, citing to *Denekas v. Shalala,* 943 F.Supp. 1073 (S.D. Iowa 1996), and *Waters v. Farmers Texas County Mut. Ins. Co.,* 9 F.3d 397 (5th Cir. 1993), Parkview suggests that the Indiana Hospital Lien Statute merely acts to determine "the share the parties are allowed to recover," which is

permitted by law. The permissible state laws in both *Denekas* and *Waters* involved determining the Medicare beneficiary's "share of the pie" of an insurance/settlement fund. *Denekas,* 943 F.Supp. 1073; *Waters,* 9 F.3d 397. However, the Indiana Hospital Lien Statute is nothing like the state apportionment laws involved in *Denekas*[2] and *Waters*[3]. The Indiana Hospital Lien Statute does not apportion what

---

[2] In *Denekas*, Edith and Raymond Denekas were involved in a car accident. Medicare made payments for medical expenses in the amount of $106,325.870. Ultimately, Edith and Raymond died and their children brought a wrongful death action as well as parental consortium claims. These claims resulted in a settlement of $125,000.

The question in *Denekas* was "whether Medicare's recovery may be reduced by apportionment of a part of the settlement proceeds to the children's loss of parental consortium claims free of Medicare's statutory right of reimbursement." *Id.* at 1078. In Iowa, a recovery in a wrongful death action which includes parental consortium claims "are to be apportioned by the court among the surviving spouse and children of the decedent in a manner as the court may deem equitable consistent with the loss of services and support sustained . . .." *Id.* at 1080. Medicare argued the apportionment statute conflicted with the MSP, but the court disagreed because the statute merely determined the portion of the settlement fund that belonged to Medicare's beneficiaries.

[3] In *Waters*, Annie Searles and four of her passengers were injured in a car accident. The driver of the other car fled and his identity was never determined. Annie, suffering from terminal cancer at the time of the accident, incurred over $29,000 in medical expenses after the accident, all of which was paid by Medicare. It was never determined what portion of the $29,000 went to treatment of Annie's cancer and what portion went to the treatment of her car accident injuries. The owner of the car was insured by Farmers Texas County Mutual Insurance Company "Farmers"). The insurance policy had a limit of $20,000 per claimant per accident and an aggregate limit of $40,000 for all claimants per accident.

Three of Annie's passengers filed in state court to recover for personal injuries and damages sustained in the accident. In response to the suit, Farmers deposited $40,000 with the court as an interpleader fund. The Government was substituted in the case

amount of the $100,000 insurance proceeds belongs to Myers, and thus can be used to satisfy Myers' obligations. Indeed, there is no argument that Myers' share of the pie was anything but 100%; all of the CIC insurance policy proceeds were initially available to pay for Myers' accident related expenses.

Instead of apportioning Myers' share of the pie, the Indiana Hospital Lien Statute works to take a share of Myers' pie by conferring upon Parkview a specific interest in Meyers' $100,000 insurance benefit. Thus, while state laws, such as those in *Denekas* and *Waters*, can limit a beneficiary's right of recovery through apportionment, that is not the case here. Parkview is not using the Indiana Hospital Lien Statute to argue that any portion of the $100,000 CIC insurance benefit did not originally belong to Myers. Instead, Parkview is attempting to use the Indiana Hospital Lien

---

and removed the case to federal court. The district court awarded the government the $20,000 limit allowed under Farmers' policy, leaving the four remaining occupants to apportion the remaining $20,000 among themselves.
 On appeal, the Fifth Circuit noted that under either the independent right of recovery or subrogation provision, "the government stands to recover from the interpleader fund exactly what Annie should recover under the interpleader fund." However, the government argued that no matter what Annie's entitlement would be under the insurance policy, Medicare should be reimbursed $20,000, the full extent of the policy's individual liability. The court of appeals disagreed and found that the MSP puts the government "in a position superior to all other claimants on Annie's share of the pie, but it does not put the government in a position superior to Annie's own claim." *Id.* at 400. Because the extent of Farmers' liability to Annie had not been determined, it was impossible to determine the government's reimbursement amount. Thus, the case was reversed and remanded.

Statute as a vehicle to move Parkview in front of Medicare for Meyers' insurance benefit. This conflicts with the MSP and is not allowed. *Waters*, 9 F.3d at 400-01.

> In the alternative, this Court finds Medicare's claim to be superior based on the United States Department of <u>Health and Human Services' construction of the Medicare statute</u>.

Even if the Indiana Hospital Lien Statute was not preempted, this Court would find Medicare's claim to be superior to that of Parkview because of the United States Department of Health and Human Services' construction of the Medicare statute. "When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984). The first question is whether "Congress has spoken to the precise question at issue." *Id.* at 842-43. If so, then the clearly expressed intent of Congress controls. *Id.* at 843. If not, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* If the agency's answer is based on a permissible construction of the statute, then the Court will accept that answer. This process is followed because statutes governing agencies are generally complex and the interpretation of the statute "depend[s] upon more than ordinary knowledge respecting the matters subjected to agency regulations." *Chevron*, 467 U.S. at 842-43.

This Court finds that Congress has not clearly spoken on the precise question presented here regarding the recovery of conditional payments. One could easily make the interpretation that 42 U.S.C. § 1395y(b)(2)(B)(iii) gives Medicare a right to take a direct cause of action. Indeed, the statute states "the United States may bring an action against any or all entities that are or were required or responsible... to make payment with respect to the same item or service (or any portion thereof) under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iii) (2008). However, 42 U.S.C. § 1395y(b)(2)(B)(iv) states that "the United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iv) (2008). These subsections could be giving Medicare two separate rights, or subsection (b)(2)(B)(iv) could be stating how Medicare is to take an action under subsection (b)(2)(B)(iii). The possible differing interpretations between these two subsections illustrates that Congress did not clearly and directly speak to the issue of how Medicare is to be reimbursed for conditional payments in this case. Thus, the Court will look to see if Medicare's interpretation of the MSP is reasonable.

Medicare's interpretation of the MSP is reasonable. Medicare's interpretation is found in the Medicare Secondary Payer Manual

("Manual"), Chapter 2 - MSP Provisions, which are guidelines established to implement the Medicare sections of Social Security Laws. Pursuant to Section 40.1, Medicare's Recovery Rights, Revision 49, issued 04-07-06 and effective 05-08-06, of the Manual:

> Medicare has a statutory direct right of reimbursement from the liability insurance as well as any entity that has received payment directly or indirectly from the proceeds of a liability insurance payment. Medicare's recovery rights take precedence over the claims of any other party, including Medicaid. Medicare's recovery right is superior to other entities including Medicaid because Medicare's direct right of recover is explicitly prescribed in Federal law and other entities' rights are based on either State law or subrogation rights.

Thus, Medicare's interpretation is that Congress intended Medicare to be a secondary payer and should be repaid *whenever* a primary payer could pay for the service that Medicare has paid for. This includes Medicare recovering conditional payments through either a subrogation action or a direct action.

Congress had intended for Medicare to be a secondary payer, and to be able to be reimbursed if any primary payer, such as an insurance company, could pay instead. *United States v. Baxter International Inc.*, 345 F.3d at 888 (11th Cir 2003); *United States v. Geier*, 816 F.Supp. at 1336 (W.D. Wis. 1993)(Medicare was meant to be a secondary payer in order to achieve major fiscal savings in the Medicare program); *Waters*, 9 F.3d at 401("[M]edicare will ordinarily pay for the beneficiary's care in the usual manner and

-16-

then [the government may] seek reimbursement from the private insurance carrier after, and to the extent that, such carrier's liability under the private policy for the services has been determined."), *citing* H.R.Rep. No. 96-1167, at 389 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 5526, 5752. Indeed, Congressional intent was to make sure that Medicare had residual liability and any payment would be repaid by insurance or another primary payer. H.R.Rep. No. 96-1167, at 389 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 5526, 5752. JULY 21, 1980.

If the primary payer did not reimburse Medicare then, "the United States may bring an action against any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iii). (2008). Through the interpretation of statutory authority coupled with relevant legislative history, it is clear that Medicare is entitled to priority over all other claimants in reimbursement of its conditional payments. *Filippi v. U.S. Dept. of Health and Human Services*, 138 F.Supp.2d 545, 547 (S.D.N.Y. 2001). Medicare's interpretation meets the requirement of step two of *Chevron* and, as such, Medicare has a superior claim to that of Parkview.

Unfortunately, neither party has presented the proper distribution of funds given this outcome. Absent settlement, the parties are **ORDERED** to provide the Court with a proposed distribution of funds in accordance with this Order on or before February 9, 2009.

CONCLUSION

For the reasons set above Secretary of Health and Human Services' Motion for Summary Judgment is **GRANTED** and Defendant Parkview Hospital, Inc.'s Motion for Summary Judgment is **DENIED**.

**DATED: January 8, 2009**          /s/RUDY LOZANO, Judge
                                    **United States District Court**